IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sandusky Wellness Center, LLC,                    Case No. 3:13 CV 2085
*an Ohio limited liability company,*
*individually and as the representative class of*      MEMORANDUM OPINION
*similarly-situated persons*,                      AND ORDER DENYING
                                                  CLASS CERTIFICATION
                                Plaintiff,
                                                  JUDGE JACK ZOUHARY
            -vs-

ASD Specialty Healthcare, Inc., et al.,

                                Defendants.


## INTRODUCTION

In June 2010, Plaintiff Sandusky Wellness Center, LLC ("Sandusky"), a chiropractic clinic, received a facsimile advertisement from Defendants ASD Specialty Healthcare, Inc., d/b/a Besse Medical and AmerisourceBergen Specialty Group, Inc. (collectively "Besse").  Sandusky initiated this putative class action on behalf of itself and other persons similarly situated, alleging Besse violated the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, by sending an unsolicited fax advertisement.

The parties have completed extensive discovery, including from expert witnesses (*see* Doc. 61).  Pending before this Court is Sandusky's Motion for Class Certification (Doc. 91), which Besse opposes (Doc. 100).  This Court held a hearing and heard argument from counsel on the Motion (*see* Docs. 104 & 107).  For the following reasons, this Court denies the Motion.

## BACKGROUND

Besse is a distributor of pharmaceuticals and medical products.  In September 2007, Besse purchased from InfoUSA, a third-party data provider, a list of contact information for physicians who prescribe pharmaceuticals (Besse Decl. (Doc. 103-4) at ¶ 3).  Using the InfoUSA list, Besse created a list of 53,502 physicians to fax an advertisement for Prolia, a prescription-only injectable drug used to treat post-menopausal osteoporosis (*id.* at ¶ 4).  The fax included information about the drug, details about cost and shipping, and directed interested persons to purchase Prolia from Besse (Doc. 1-1).  Besse retained fax broadcaster WestFax to transmit the Prolia fax.  On June 16, 2010, WestFax attempted to send the Prolia fax to the 53,502 numbers on the list (Besse Decl. ¶ 6).  Of those, WestFax successfully transmitted 40,343 faxes (or 75.4%) (Doc. 91-7; Biggerstaff Report (Doc. 83-3) at ¶¶ 18, 23, 25).

Sandusky defines the proposed class as (Doc. 91 at 12; Doc. 107):

> All persons who were successfully sent a facsimile on or about June 16, 2010, by or on behalf of Besse Medical and/or AmerisourceBergen Speciality Group regarding "Prolia" and stating: "Besse Medical sends important announcements, recall notices, promotions, etc. via FAX.  If you wish to opt-out and no longer receive FAX communications from Besse Medical, please check here ( ) and fax back to 1-800-736-8866, Attn: FAX OPT OUT.  Please note that by opting out you will delay receipt of important notices, such as a product recall."

## LEGAL STANDARD

A plaintiff must "affirmatively demonstrate" compliance with Federal Civil Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  This Court must check that compliance "through rigorous analysis." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (internal quotation marks omitted); *see also id.* at 418 n.8 (declining to impose a preponderance-of-the-evidence standard).  Plaintiff must "satisfy through evidentiary proof [each of

2

the Rule 23(a) factors and] at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). However, Rule 23 grants "no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194–95 (2013).

To satisfy Rule 23(a), a plaintiff must establish as a threshold matter that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Sandusky seeks to certify this class under Rule 23(b)(3), which requires a finding that "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011). This Court has "broad discretion" in deciding whether to certify a class within the framework of Rule 23. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "[A] court is allowed to look beyond the pleadings on a class certification motion to determine what type of evidence will be presented by the parties." *Rodney v. Nw. Airlines, Inc.*, 146 F. App'x 783, 785 (6th Cir. 2005) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).

## DISCUSSION

Besse does not dispute that the proposed class satisfies the numerosity and typicality prerequisites for class certification. Besse's Opposition is focused on the proposed class being overbroad and Sandusky being unable to demonstrate ascertainability, manageability, or commonality. Specifically, Besse contends individualized issues as to the identity of the intended fax recipients and

whether each recipient consented to receiving the fax predominate, making class certification improper.

Sandusky asserts the proposed class satisfies Rule 23(b)(3) because the class is "'defined by objective criteria' of having been sent a specific fax during a specific time frame" (Doc. 91 at 12 (quoting *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015))).  However, only persons to whom faxes were "successfully sent" are proper claimants under the TCPA.  *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 632–34 (6th Cir. 2015); *see Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014) (affirming certification where class was defined as persons who were "successfully sent a facsimile").  The parties agree the individuals associated with the unsuccessful 13,159 fax transmissions (24.6% of the list) lack standing.

Identifying fax recipients is typically accomplished by examining fax logs that confirm which faxes successfully transmitted and which failed.  *See e.g.*, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684–85 (7th Cir. 2013) (affirming certification based on predominance where fax logs identify fax recipients and thus there was "no need for recipient-by-recipient adjudication").  That analysis is not possible here because Besse only retains its emails for up to eighteen months (Doc. 100-6 at 3–4).  Any fax logs Besse received from WestFax at the time of the 2010 fax were gone by the time Sandusky initiated this lawsuit in 2013 (Besse Decl. at ¶ 8).  Without the fax logs, there is no classwide method by which to identify the 13,159 class members who have no claim.

This Court acknowledges Sandusky's argument that Besse should not escape responsibility for its potential wrongdoing because of its lack of records.  But the absence of the fax logs does not alleviate Sandusky's burden of demonstrating that the proposed class meets the Rule 23 requirements.  Even though Sandusky can identify the potential universe of fax recipients, class certification is

4

improper because individualized issues predominate as to whom Besse "successfully sent" the Prolia fax. *See City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc.*, 2015 WL 5769951, at *8 (D.N.J. 2015) (finding plaintiff failed to demonstrate class ascertainability where defendant did not retain a record of fax transmissions and there was "no objective way of determining which customers were actually sent" the fax); *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, 2015 WL 1538497, at *4 (N.D. Ill. 2015) (denying class certification where records "show aggregate data of faxes sent and do not show individual fax numbers . . . just the total number of faxes sent")*; Brey Corp. v. LQ Mgmt. LLC*, 2014 WL 943445, at *1 (D. Md. 2014) (finding "no objective criteria" to establish class membership because there were no fax logs); *cf. City Select Auto Sales, Inc. v. David Randall Assoc., Inc.*, 296 F.R.D. 299, 314–15 (D.N.J. 2013) (certifying class where plaintiff's expert compiled list of the fax numbers that were "successfully sent"); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009) (granting certification and finding the fax logs were "sufficiently reliable to establish how many faxes were successfully sent" and to identify fax recipients).  For the same reasons, Sandusky has not established its class definition is administratively feasible.  *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538–41 (6th Cir. 2012).

Sandusky resists this conclusion by relying on *Rikos v. Proctor & Gamble Co.*, where the Sixth Circuit certified a class of consumers who purchased a nutritional supplement despite argument from defendant that plaintiffs failed to demonstrate a "reliable and administratively feasible method for *identifying* the class members."  799 F.3d at 524 (emphasis in original).  The court reasoned class membership could "be determined with reasonable -- but not perfect -- accuracy," confirmed by "substantial review, likely of internal [defendant] data," and "supplemented through the use of receipts, affidavits, and a special master to review individual claims."  *Id.* at 526.  Unlike in *Rikos*,

5

Sandusky fails to advance any theory of generalized proof regarding receipt of the Prolia fax to enable this Court to make even a "reasonable" determination of class membership. Without the fax log, each potential class member would have to submit an affidavit certifying receipt of the Prolia fax. Given that the fax was sent in 2010, the "recollection of a putative class member that he, she, or it had received a particular unsolicited fax would be somewhat suspect." *Brey*, 2014 WL 943445, at *1.

The proposed class definition is also problematic because it focuses on individuals "who were successfully sent" the Prolia fax. However, as this Court addressed in its earlier Order (Doc. 90), the intended fax recipient is not apparent from the face of the document. As to the named Plaintiff, Besse argues it intended to send the Prolia fax to Dr. Juan Penhos, not Sandusky, but the fax did not specify to whom it was intended (Doc. 79 at 16; Besse Dep. (Doc. 79-2) at 30–32). Further complicating the analysis, the list of fax numbers included two entries for Penhos with two different fax numbers -- one at Sandusky and one at his private office (Doc. 83-1). Based on that record, this Court found there is a genuine issue of fact whether the fax was part of a mass advertising "fax blast" intended for Sandusky, or a targeted advertisement directed to Penhos (Doc. 90 at 6). Under the class definition, Penhos or Sandusky, or both, may be class members. And this is not the only instance where the listed fax number may be associated with multiple physicians or entities (*see, e.g.*, Besse Decl. at ¶¶ 17, 30–32, 59). Identifying the intended recipient of the Prolia fax and whether that recipient consented would require this Court to conduct an individualized inquiry into the unique circumstances of each fax transmission. *See Sandusky Wellness Ctr. LLC v. Medtox Sci., Inc.*, 2014 WL 3846037, at *3–4 (D. Minn. 2014) (denying class certification).

Even if Sandusky could identify each class member with "reasonable accuracy," this Court would still have to determine whether each individual class member provided Besse "prior express

6

invitation or consent" to receive facsimile advertisements.  *See* 47 U.S.C. § 227(a)(5) (defining "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission").  An "unsolicited advertisement" sent by fax violates the TCPA unless the sender can establish three elements: (1) the sender has an established business relationship with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or from a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute.  *See* 47 U.S.C. § 227(b)(1).

Sandusky argues consent to the Prolia fax is irrelevant because the fax did not include a proper opt-out notice (Doc. 91 at 12–13).  Besse contends consent is always relevant because the TCPA applies only to "unsolicited advertisements" and, regardless, the Prolia fax included a clear opt-out notice (Doc. 100 at 16–17).  Even assuming solicited faxes require opt-out notices and the notice on the Prolia fax was deficient, the Federal Communications Commission ("FCC") granted Besse a retroactive waiver from the notice requirement (Doc. 100-11). Sandusky dismisses the FCC's waiver as applying only in FCC enforcement proceedings and argues that applying the waiver to private litigations violates "separation of powers" (Doc. 91 at 16–18).  Other courts have struggled with the applicability of FCC waivers to civil litigation, *see, e.g.*, *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 498 (W.D. Mich. 2015) ("the FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action"), and the question is before the Court of Appeals for the District of Columbia in *Bais Yaakov of Spring Valley, et al., v. FCC et al.*, No. 14-1234.

7

Sandusky urges that this Court need not decide the effect of the waiver because "whether the FCC can grant a retroactive waiver that would apply in civil litigation between private parties is itself merely another class-wide question that does not preclude class certification" (Doc. 91 at 17 (internal quotation omitted)). While the question as to the applicability of the waiver does not defeat commonality, individual inquiries whether each class member consented to the Prolia fax preclude class certification.

The InfoUSA list included contact information of both prospective clients and "several thousand" current or former Besse customers, many of whom had consented to receive faxes (Besse Decl. at ¶ 5).  Besse has presented evidence that some of the fax advertisements were solicited, but identifying those recipients who consented to receiving faxes is a case-by-case analysis (*see* Lee Dep. (Doc. 100-10) at 18–19).  Besse customers consented through a variety of different forms, completed in unique ways at different times.  Besse claims that determining which of the proposed class members consented to receiving faxes would require manually cross-checking 450,000 potential consent forms against the 53,502 potential class members (Besse Decl. at ¶¶ 9–11, 14–107). Certification is thus inappropriate because Sandusky has "failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [Besse] may be liable under the TCPA." *Gene and Gene LLC v. BioPay*, 541 F.3d 318, 327–29 (5th Cir. 2008) (denying class certification where issue of consent could not be established via class-wide proof); *cf. Siding & Insulation Co. v. Combined Ins. Grp. Ltd.,* 2012 WL 1425093, at *3 (N.D. Ohio 2012) (finding common issues of consent predominated where the fax sender "produced no evidence that any individual consented to receive the fax advertisement and, therefore, is unable to realistically argue that individual issues relative to consent outweigh commonality").

## CONCLUSION

Sandusky moves to certify a TCPA fax class where fax logs are no longer available to identify class members, and where Besse produced evidence that some class members consented to receiving the fax.  While each of these issues alone may not preclude class certification, when viewed together they not only predominate, but overwhelm the common questions Sandusky seeks to certify.  This seems to be the exact type of case that would devolve into a series of mini-trials, which Rule 23(b)(3) seeks to prevent.  For these reasons, Plaintiff's Motion for Class Certification (Doc. 91) is denied.

IT IS SO ORDERED.

_____s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 7, 2016